*1186 COPE, J.
(dissenting).
I respectfully dissent. The police officer in this case failed to sign the affidavit in support of the search warrant. Florida follows a rule of strict construction of the statutory and constitutional provisions governing the issuance of search warrants, so the failure to sign is fatal to the warrant.
The majority opinion errs in saying that the warrant can be upheld under the Com-formity Clause of Article I, Section 12 of the Florida Constitution. Absent a United States Supreme Court case squarely on point — and there is none — Florida law governs.
I.
This is a State appeal of an order suppressing evidence because the officer failed to sign the affidavit in support of the search warrant. A Miami-Dade County police detective drafted an affidavit in support of a search warrant to search a single family home and two additional structures which were on the same property. The affidavit set forth the reasons why the detective believed that marijuana was being grown at that location.
The detective took the affidavit to a circuit judge. The first paragraph of the affidavit states that the detective was duly sworn. The detective and the judge initialed each of the six pages of the affidavit.
On the final page there was a signature line for the affiant. The detective failed to sign it. Below the signature blank was a jurat stating “Sworn to and subscribed before me this the 16th day of May, 2007.” The judge signed the jurat.
The search warrant was executed and contraband was found. Defendant-appellant Alfredo Moreno-Gonzalez was charged with being in actual or constructive possession of more than twenty-five pounds, but less than two thousand pounds, of cannabis.
The defendant filed a motion to suppress the evidence. A successor judge conducted an evidentiary hearing. The detective testified that the judge administered an oath and that she swoz’e to the affidavit. The detective acknowledged that she did not sign on the signature line.
The trial court suppressed the evidence, reasoning that the affidavit was defective because it was not signed, and that suppression was required. The State has appealed.
II.
“When searches and seizures are made pursuant to the command of a search warrant, both the search warrant and the prerequisite oath or affirmation required for it must conform strictly to the constitutional and statutory provisions authorizing their issue.” Jackson v. State, 87 Fla. 262, 99 So. 548, 549 (1924) (emphasis added); see also State v. Laiser, 322 So.2d 490, 492 (Fla.1975) (referring to the “strict interpretation which we have imposed for pre-seizure protections.”); Collins v. State, 465 So.2d 1266, 1268 (Fla. 2d DCA 1985) (“affidavits and warrants must meticulously conform to statutory and constitutional provisions.”); cf. State v. Vargas, 667 So.2d 175, 176-77 (Fla.1995) (suppressing evidence where warrant was served by an officer not named in the warrant, in violation of section 933.08, Florida Statutes).[2]
The strict construction rule is subject to the qualification that suppression is not required for a purely technical error. Cain v. State, 287 So.2d 69, 70 (Fla.1973). *1187 In Cain the judge failed to fill in the date that he signed the warrant. The Court concluded that suppression was not required because the error “was a mere technicality and not prejudicial.” Id.
The question, then, is whether the failure to sign the affidavit is a mere technical error, or is a substantive issue. The Florida constitutional provision states that a search warrant cannot be issued except upon probable cause, “supported by affida-vft[.]” Art. I, § 12, Fla. Const. (1968). By statute, the affidavit must be signed. § 933.06, Fla. Stat. (2007) (“The judge must, before issuing the warrant, have the application of some person for said warrant duly sworn to and subscribed!)]”) (emphasis added); see also id. § 933.18 (specifying grounds for search of dwelling; requiring “sworn proof by affidavit ... that ... one of said conditions exists[.]”).
In State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982), the court considered a case indistinguishable from the present one. There, as here, the officer had been placed under oath and swore to the truth of the statements in the affidavit, but failed to sign the affidavit. Over one dissent, the court concluded that under the rule of strict compliance, the signature requirement must be enforced. Id. at 1087-88.
It is true that the result in this case would be different under decisions of the federal courts of appeals and in a number of other states. According to Professor LaFave, “a written affidavit is not per se defective because it contains no signature or because it is shown that the signature was affixed subsequent to the search; in such instances it is still open to the prosecution to show by testimony that the affi-ant had taken an oath.” 2 Wayne R. LaFave, Search and Seizure: a Treatise on the Fourth Amendment § 4.3(e), at 521-22 (4th ed. 2004). “[T]he failure to sign the warrant affidavit does not invalidate the warrant if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate.” Smith v. State, 207 S.W.3d 787, 792 (Tex.Crim.App.2006).
There is, however, an exception. Professor LaFave states, “In some jurisdictions, the applicable statutes or court rules may be more strict.” Id. § 4.3(e), at 522 n. 64. Florida is such a jurisdiction.
Florida law requires that the application for the search warrant be signed. § 933.06, Fla. Stat. (2007) (“sworn to and subscribed”). Florida follows a rule of strict construction. Jackson, 99 So. at 549 (oath or affirmation “must conform strictly to the constitutional and statutory provisions authorizing their issue.”). See also Smith, 207 S.W.3d at 791 n. 20 (“A few states have held that a signature is required; in these cases, though, either a statutory provision or the state constitution required the signature.”).
Given (a) the text of the Florida Constitution and statutory provisions, and (b) the rule of strict construction, suppression is required.
III.
The majority opinion reasons that reversal is required by the Conformity Clause contained in Article I, section 12 of the Florida Constitution. Respectfully, that is not correct. The majority opinion is inconsistent with Florida Supreme Court precedent interpreting the Conformity Clause.
Florida’s protection against illegal searches and seizures is found in Article I, section 12 of the Florida Constitution. As stated in the majority opinion, this was amended in 1982 to specify that Article I, section 12 will be construed “in conformity with the 4th Amendment of the United States Constitution, “as interpreted by the United States Supreme Court.” Articles *1188 seized in violation of this right shall not be admissible in evidence “if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.” (Emphasis added).[3]
The Florida Supreme Court has held that for the Conformity Clause to be applicable, there must be a United States “Supreme Court pronouncement factually and legally on point....” State v. Daniel, 665 So.2d 1040, 1047 n. 10 (Fla.1995), receded from on other grounds, Holland v. State, 696 So.2d 757, 760 (Fla.1997). The Court has explained:
[I]n the absence of a controlling U.S. Supreme Court decision, Florida courts are still “free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the Federal Constitution.”
With the conformity clause amendment, we are bound to follow the interpretations of the United States Supreme Court with respect to the Fourth Amendment and provide to Florida citizens no greater protection than those interpretations. Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988). However, when the United States Supreme Court has not previously addressed a particular search and seizure issue which comes before us for review, we will look to our own precedent for guidance.
Soca v. State, 673 So.2d 24, 26-27 (Fla.1996) (citations omitted) (emphasis added).[4]
The question, then, is whether there is a United States Supreme Court pronouncement which is “factually and legally on point with the present case[.]” Daniel, 665 So.2d at 1047 n. 10. The answer to that question is no.
The majority opinion relies on the United States Supreme Court opinion in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), but that case involved a different issue. The question there was how to interpret the text of an affidavit in support of a search warrant in order to determine whether probable cause for a search exists. In Ventresca, a federal court of appeals had held an affidavit “insufficient on the ground that ‘[t]he affidavit failed to clearly indicate which of the facts alleged thereon were hearsay or which were within the affiant’s own knowledge,’ and therefore ‘(t)lie Commissioner could only conclude that the entire affidavit was based on hearsay.’ ” Id. at 109, 85 S.Ct. 741. Rejecting these technical objec *1189 tions, the United States Supreme Court held that affidavits for search warrants “must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.... Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.” Id. at 108, 85 S.Ct. 741. The Ventresea decision did not involve the factual situation now before us, namely, where an officer submitted an affidavit in support of a search warrant and failed to sign it.
The majority opinion relies in passing on three other United States Supreme Court decisions. Majority opinion at 6. None is factually or legally on point. In Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the Court concluded that the text of the complaint filed by the sheriff was facially insufficient to establish probable cause for an arrest or search. In McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927), the Court held that a congressional committee’s un-sworn report was a sufficient basis for the issuance of a warrant to compel the attendance of an absent witness. In Ex parte Burford, 7 U.S. 448, 2 L.Ed. 495 (1806), the defendant had been illegally committed to jail where a warrant had been issued without any sworn evidence. None of these cases addresses the factual and legal issue now before us.
The First District has considered the Conformity Clause in a case similar to the one which is now before us. In Mylock v. State, 750 So.2d 144 (Fla. 1st DCA 2000), a judge issued a search warrant on the basis of oral statements by deputy sheriffs. No affidavit was submitted. The State argued that under the Conformity Clause and the United States Supreme Court decisions Whiteley, McGrain, and Burford, it was unnecessary to file an affidavit. The First District said that while there are federal court of appeals decisions holding that the Fourth Amendment does not require a written affidavit, there was no United States Supreme Court decision on the point. “The United States Supreme Court ... has never squarely reached the issue.” Mylock, 750 So.2d at 147.
The Myloclc court concluded that “in the absence of a United States Supreme Court decision controlling the issue before us, the validity of the warrant is controlled by Florida constitutional and statutory provisions requiring that a search warrant must be supported by an affidavit.” Id. Because the warrant was issued without an affidavit, the warrant was invalid. Id.
The Myloclc analysis is applicable here. There is no United States “Supreme Court pronouncement factually and legally on point with the present case.... ” Daniel, 665 So.2d at 1047 n. 10. Florida’s Conformity Clause is therefore not applicable.
It follows that the Florida Constitution, statutes, and cases are controlling. Under the case law requiring strict construction, we are obligated to affirm the suppression order. If we wish to suggest a change in Florida law, then the appropriate procedure would be to affirm the trial court’s ruling but certify a question.[5]

. In Laiser, the Court explained that strict interpretation would be applied pre-seizure, whereas for post-seizure conduct, "we con-elude that substantial compliance is sufficient where no prejudice is shown." Laiser, 322 So.2d at 492.

. Ardele I, section 12 states in full (with the 1982 amendment indicated in boldface in the text):
SECTION 12. Searches and seizures.— The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
Art. I, § 12, Fla. Const, (amended 1982) (emphasis added).

. The Soca decision has been superseded on other grounds. Bamberg v. State, 953 So.2d 649, 654 (Fla. 2d DCA 2007).

. The State argues that we should reverse under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), but that argument was not raised in the trial court and may not be considered here.